21-MJ-7257-JCB

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Christopher M. Klier, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Quincy Police Detective assigned to the Narcotics and Organized Crime Unit and have been employed as a police officer since 2001. I am also a Task Force Officer with the Drug Enforcement Administration ("DEA") presently assigned to the Boston Tactical Diversion Squad ("TDS") which is comprised of multiple law enforcement agencies on a local, state and federal level. DEA Boston TDS conducts multijurisdictional state and federal drug investigations in an attempt to identify and dismantle Drug Trafficking Organizations ("DTOs") that distribute drugs throughout the District of Massachusetts and neighboring districts. As a DEA TFO, I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws set forth in Title 21 of the United States Code.

2. I am a graduate of the Massachusetts Criminal Justice Training Council's Police Academy (Massachusetts Police Corps 01-01). I hold a Master of Science degree in Criminal Justice Administration from Western New England College and a Bachelor of Arts degree from Assumption College. In addition to annual 40-hour in-service trainings, I have participated in several educational seminars and courses pertaining to narcotics investigations. I have completed an 80-hour Basic Narcotics Investigator School hosted by the DEA. This training covered investigative methods, surveillance techniques, writing and executing search warrants and working with confidential informants. I have also received 48 hours of training pertaining to proactive criminal enforcement hosted by the Massachusetts State Police (P.A.C.E). This training focused on drug and criminal interdiction, officer survival, and secret electronic/hydraulic compartments

found in vehicles for the purpose of hiding drugs, money, and weapons. I also attended various training seminars (60 hours) administered by Professional Law Enforcement Training (PLET), including patrol officer drug investigations, cultivating and managing confidential informants and undercover operations. I am also a member of the New England Narcotics Officers Association and attended the 2018 and 2019 spring seminars.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4. In the course of my official duties as a police officer and TFO, I have interviewed many defendants, informants, and suspects who were users, sellers, and distributors of controlled substances. On the basis of my training and experience, I am familiar with the vernacular used by illegal drug users and distributors. I am acquainted with the methods by which such persons seek to disguise the subject of their conversations and operations, and I am familiar with the full range of methods, practices, and techniques by which members of organized conspiracies illicitly transport and distribute controlled substances. I am also familiar with the various paraphernalia used to manufacture, process, deliver, dispense, import, export, and use controlled substances.

5. Based on my training and experience, I am aware that drug traffickers commonly use cellular telephones to communicate and further their drug-trafficking activities. However, drug traffickers are aware of law enforcement's use of electronic surveillance, and thus frequently

endeavor to thwart detection by changing cellular telephone numbers, using multiple cellular phones at the same time, and/or utilizing prepaid cellular phones where the user of the phone is not required to provide personal identifying information. I am also aware that drug traffickers frequently "drop" or change cellular telephone numbers and cellular telephones in an effort to thwart law enforcement's use of electronic surveillance.

## PURPOSE OF AFFIDAVIT

6. I submit this affidavit in support of an application for a criminal complaint charging Igor DESOUZA ("DESOUZA") ▮▮▮▮▮ with violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 841(b)(1)(B)(vi) and 18 U.S.C. § 2 (possession with intent to distribute 500 grams or more of a mixture or substance of methamphetamine; possession with intent to distribute 40 grams or more of a mixture and substance of fentanyl; and, aiding and abetting, respectively). I also am seeking arrest warrants for DESOUZA ▮▮▮▮▮.

7. I have personally participated in the investigation of DESOUZA ▮▮▮▮▮ as outlined in this affidavit. I am familiar with the facts and circumstances of this investigation based upon: (a) my personal knowledge and involvement in this investigation; (b) my review of records related to this investigation; (c) information provided to me orally and in writing by other law enforcement agents; and (d) my experience and training as a criminal investigator.

8. This Affidavit is submitted for the limited purpose of establishing probable cause to believe that DESOUZA ▮▮▮▮▮ have committed the above offenses. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

21-MJ-7257-JCB

## PROBABLE CAUSE

9. On May 25, 2021, investigators executed state search warrants issued out of Malden District Court for the residence of 2 Chester Street in Malden, Massachusetts and the person of Igor DESOUZA. The search warrants were issued in connection with a drug investigation and permitted officers to search for, among other things, fentanyl and any instruments or paraphernalia used in or proceeds obtained from the distribution of a controlled substance.

10. Specifically, at around 11:10 a.m. that day, agents observed DESOUZA exit the back of 2 Chester Street, get into the driver's seat of a gray Dodge Caliber ("Dodge Caliber") and drive away. He drove to the area of Adams Street in Malden and parked near 69 Adams Street, behind a black Volvo occupied by a man later identified as Mackenzie Gray-McDonald ("Gray-McDonald"). DESOUZA exited the Dodge Caliber and entered the front passenger seat of the Volvo, and approximately thirty seconds later, DESOUZA got out of the Volvo, reentered the Dodge Caliber and drove away. Based upon their training, experience and knowledge of the investigation, agents believed a drug transaction had occurred. Agents approached Gray-McDonald, identified themselves as law enforcement and asked him where the drugs were that Gray-McDonald had just purchased. Gray-McDonald said, "They're right here" and showed agents several small round blue pills in plain view on the front passenger seat. Agents asked where Gray-McDonald got the pills from, to which he replied, "You just saw who I got them from." Gray-McDonald was subsequently placed under arrest and charged in state court.

11. Agents stopped the Dodge Caliber driven by DESOUZA near Salem Street at Grant Street in Medford. Agents executed the search warrant for the person of DESOUZA, during which

agents recovered two cell phones and approximately $12,550 in cash.[1] In plain view in the driver's side door, agents recovered four pills that looked like oxycodone pills. Investigators observed several messages appear on the locked home screens of the seized cell phones, including messages in the Snapchat and WhatsApp applications. Based upon my training and experience, I believe that drug traffickers, like DESOUZA, often use Snapchat and WhatsApp to send messages to facilitate drug transactions because these cellphone applications are known both to encrypt the data and to delete messages after the user of the device reads them.

12. At around 12:30 p.m., agents executed the state search warrant for 2 Chester Street in Malden, Massachusetts. Agents were aware that DESOUZA resided at 2 Chester Street with two other roommates, ████████████████████████████████ During the search, agents recovered nearly 10,000 pills, along with firearms and ammunition. The narcotics seized included the following: several thousand suspected methamphetamine pills clandestinely pressed to resemble trademark Adderall or Xanax tablets, several thousand suspected fentanyl pills clandestinely pressed to resemble trademark oxycodone pills, several thousand MDMA tablets, suspected pharmaceutically produced amphetamine pills, suspected pharmaceutically produced oxycodone pills, suspected Lysergic acid Diethylamide ("LSD") doses, suspected crack cocaine, suspected powder cocaine, Psilocybin mushrooms, suboxone strips, suspected MDMA crystals and suspected black tar heroin. Some of the drugs were field tested. Agents sent the drug evidence recovered during the search of 2 Chester and from the search of DESOUZA's person to the DEA Northeast Regional Laboratory for testing and analysis. The results of much of that testing is still

---

[1] DESOUZA stated to law enforcement that the cash was his and he planned to buy a car that was about $13,500. DESOUZA also indicated that he buys and sells cars independently.

pending. The items noted above, and set forth in greater detail below, were found in different rooms throughout the 2 Chester Street residence, including DESOUZA's bedroom, ▮▮▮▮ bedroom, ▮▮▮▮ bedroom and the shared kitchen area. The drug items were found in DESOUZA's room, ▮▮▮▮ room and the shared kitchen and living area.

13. The 2 Chester Street residence is a three-bedroom apartment and consists of a living room, a kitchen, one bathroom and three bedrooms. Based on documents seized from the bedrooms, agents were able to identify one bedroom as inhabited by DESOUZA, one bedroom as inhabited by ▮▮▮▮, and one bedroom as inhabited by ▮▮▮. Specifically, agents observed DESOUZA's passport in one of the bedrooms, mail and other documents in ▮▮▮▮ name in one of the bedrooms, and other documents in ▮▮▮ name in the remaining bedroom.

14. The items seized from 2 Chester included the following: From the closet of DESOUZA's bedroom, agents seized multiple plastic bags containing round blue pills believed to contain fentanyl,[2] a loaded 9mm magazine, and an unloaded 9mm magazine. The two magazines were recovered from inside a shoe and a jean jacket, respectively. Some of the pills recovered from the closet, specifically from a jean jacket pocket, tested positive at the DEA Laboratory for fentanyl. Those pills weighed approximately 44 grams.

15. From the nightstand in DESOUZA's room, agents recovered loose rounds of ammunition located next to DESOUZA's passport, approximately $1,200 cash, and several multi-colored round pills with various markings, believed to contain fentanyl. From a box under the bed, agents recovered 22 rounds of ammunition. From a safe located in DESOUZA's bedroom, agents

---

[2] My belief that the various pills described in this affidavit contain the drugs I list is based on the appearance of the pills, my training and experience, and in some cases field tests of the drugs.

recovered several plastic bags of pills that tested positive for the presence of fentanyl and weighed approximately 6.5 grams, a plastic bag with several blue skull-shaped tablets believed to contain MDMA, a plastic bag with multi-colored, multi-shaped tablets believed to contain MDMA, a prescription bottle with a white rock-like substance believed to be crack cocaine, a plastic bag containing round-shaped green colored pills with an "E 7" imprint, a plastic bag containing green-colored powder, plastic bags containing a white powdery substance, a plastic bag containing brown powder, sheets of paper "stamps" believed to be LSD, additional bags of pills and capsules and loose ammunition.

16. From the top dresser drawer in DESOUZA's room, agents recovered multicolored square pills with circular markings that tested positive for the presence of methamphetamine and weighed approximately 267 grams, orange pills that tested positive for the presence of methamphetamine and weighed approximately 24 grams, and blue pills that tested positive for the presence of fentanyl and weighed approximately 14 grams. Based upon my training and experience, I believe the orange methamphetamine pills are designed to appear like prescription Adderall pills.

17. From plastic bags and capsules in a box on the floor of DESOUZA's bedroom, agents recovered a white powdery substance believed to contain cocaine. Agents also recovered a plastic bag containing yellow-bar shaped tablets believed to contain fentanyl, a plastic bag containing round orange tablets believed to contain methamphetamine and two small bags containing light blue pills bearing imprints of "M" and "30" that tested positive for the presence of fentanyl and weighed approximately 17 grams. Based upon my training and experience, I believe the blue fentanyl pills bearing the imprints of "M" and "30" are designed to appear like prescription oxycodone pills.

18.     In ▮▮▮▮▮▮ bedroom, agents located multiple plastic bags of small round blue pills in a top dresser drawer, random samples of which tested positive for the presence of fentanyl. The pills weighed approximately 52 grams.[3] From the closet of ▮▮▮▮▮▮ bedroom, agents recovered multiple plastic bags of orange pills that tested positive for the presence of methamphetamine and weighed 836 grams, multiple bags of a green leaf like substance believed to be marijuana, and a plastic bag of a white-powdery substance that tested positive for cocaine. Based upon my training and experience, I believe the blue fentanyl pills are designed to appear like prescription oxycodone pills and the orange methamphetamine pills are designed to appear like prescription Adderall pills.  In a bag on the floor in the corner of the bedroom, agents located approximately $15,000. In the bottom drawer of a dresser, agents located an unloaded Glock 9mm firearm. On the floor of the bedroom, agents located a Glock 9mm magazine. From a shoebox on the floor, agents recovered several plastic bags containing multi-colored and multi-shaped tablets weighing approximately 305 grams with packaging, which were field tested and tested positive for the presumptive presence of MDMA.

19.     In ▮▮▮▮▮ bedroom, agents located a cardboard box inside an armoire that contained over 200 rounds of assorted ammunition for various calibers of firearms. In the same room, agents also located a Ruger firearm storage box with no firearm located inside.

20.     From a plastic bag in the kitchen pantry, agents recovered several round orange tablets believed to contain methamphetamine, weighing approximately 15 grams. A sample of these pills was field tested and tested positive for a presumptive presence of methamphetamine. Also, from the kitchen, agents recovered from a box on top of the kitchen cabinets approximately

---

[3] Further testing related to the remaining pills from this drug exhibit remains pending.

17 plastic bags of round orange tablets that tested positive for the presence of methamphetamine and weighed approximately 571 grams. Based upon my training and experience, I believe these orange methamphetamine pills were designed to appear like prescription Adderall pills. Also from the kitchen pantry, agents recovered, among other things, several packets labeled as suboxone sublingual films, a plastic bag with round orange tablets that field tested positive for the presence of methamphetamine, two bags containing multi-colored and multi-shaped tablets believed to contain MDMA, a prescription pill bottle containing several tablets presumed to be oxycodone, a white rock-like substance that tested positive for cocaine base, and a plastic bag containing bar-shaped tablets believed to contain fentanyl. Based upon my training and experience, I believe the bar-shaped tablets were designed to appear like prescription Xanax pills.

21. The above list of drugs, firearms, and ammunition found in DESOUZA's, ▓▓▓▓ bedrooms and in the common spaces of the residence is not all inclusive of items ultimately recovered, seized or observed.[4]

22. Based on my training and experience, possession of the above-described variety of controlled substances in the quantities described above is consistent with possession with intent to distribute controlled substances and is not consistent with possession for personal use.

23. From 2 Chester Street, agents also recovered mail received from a utility company and a bank addressed to DESOUZA at the 2 Chester Street address. Agents also recovered a bill of sale related to a vehicle purchased by ▓▓▓▓ in ▓▓▓▓ name. A record check with the

---

[4] Approximately sixty (60) drug exhibits were seized during the execution of the search warrant at 2 Chester. Because this affidavit is submitted for the limited purpose of establishing probable cause for the criminal complaints for DESOUZA ▓▓▓▓, not all drug exhibits are outlined in this affidavit.

Massachusetts Registry of Motor Vehicles revealed that both DESOUZA's ▮ driver's licenses listed addresses of 2 Chester Street. ▮ had a vehicle registered in his name to the 2 Chester Street address, as well.

24. Given that both fentanyl and methamphetamine pills were found in both DESOUZA's ▮ rooms and that additional narcotics, including methamphetamine pills, were found in the kitchen common area, I believe that both DESOUZA ▮ jointly possessed and aided and abetted the other with the possession of these substances at their shared address.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

25. Based on the foregoing, there is probable cause to believe that on or about May 25, 2021, DESOUZA ▓▓▓ did knowingly and intentionally possess with intent to distribute 500 or more grams of a mixture or substance containing methamphetamine and possess with intent to distribute 40 or more grams of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 841(b)(1)(B)(vi), and aiding and abetting, in violation of 18 U.S.C. § 2. Accordingly, I respectfully request the Court issue a Criminal Complaint charging DESOUZA ▓▓▓ with possession with intent to distribute 500 or more grams of a mixture or substance containing methamphetamine and possession with intent to distribute 40 or more grams of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 841(b)(1)(B)(vi), and aiding and abetting, in violation of 18 U.S.C. § 2.

Signed under the pains and penalties of perjury.

Respectfully Submitted,

_[signature]_

CHRISTOPHER M. KLIER
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION

ATTESTED and SWORN to before me telephonically in accordance with the requirements of Fed. R. Crim. P. 4.1 on November __3__, 2021.

_[signature]_

HONORABLE JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS